ROBERT D. SILVERMAN *vs.* CLAUDIA A. SPIRO.

Norfolk. December 2, 2002. - February 24, 2003.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Divorce and Separation,* Modification of judgment, Division of property, Child support, Attorney's fees, Pension benefits, Separation agreement. *Contempt. Employee Retirement Income Security Act. Minor,* Visitation rights.

A Probate Court judge did not err in setting the amount of attorney's fees awarded in an action seeking modification of a judgment of divorce nisi and relief for contempt, where the attorney's fees were commensurate with the services performed, and were awarded in connection with both the modification judgment and the contempt judgment, thus simultaneously granting reimbursement to the father and sanctioning the mother; where the judge correctly ordered accommodation for certain tax consequences that resulted from liquidation of some of the mother's retirement assets; and where the judge gave the mother an adequate opportunity to address the issue of attorney's fees and costs in a written submission. [730-731]

A Probate Court judge properly entered a qualified domestic relations order (QDRO) that required the mother in a domestic relations dispute to pay attorney's fees to the father out of her retirement fund in order to reimburse the father for fees paid to his attorney in establishing back child support owed by the mother; however, this court vacated the QDRO with respect to the time spent by the attorney on other aspects of the case that did not relate to the "provision of child support, alimony payments, or marital rights." [731-736]

There was no merit to the contention by the mother in a proceeding for modification of a judgment of divorce nisi that a new trial was required because the judge excluded a certain letter and proffered testimony. [736]

In a proceeding for modification of a judgment of divorce nisi, there was ample support in the record for the judge's imposition of restrictions on the mother's visitation with the children, with the sole exception that the judge should not have conditioned the mother's visitation on individual therapy sessions between the mother and a therapist "for as many sessions as [the therapist] deems appropriate." [736-737]

In a proceeding for modification of a judgment of divorce nisi, the judge erred in awarding the father sole ownership of property he removed from the marital home where, in the separation agreement, the parties had jointly stipulated to the distribution of marital property, provided that the distribution was final, and expressly excepted this aspect of the agreement from merging in the judgment of divorce nisi. [737]

In a proceeding for modification of a judgment of divorce nisi, there was suf-

ficient evidence to justify a finding of contempt for the mother's failure to cooperate in the filing of the parties' joint tax return and her failure to transfer title to the parties' automobile. [737]

COMPLAINT for divorce filed in the Norfolk Division of the Probate and Family Court Department on July 9, 1997.

Complaints for contempt and modification, filed on December 17, 1998, were heard by *Eileen M. Shaevel*, J., and a motion for entry of a qualified domestic relations order was heard by *Paula M. Carey*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael J. Traft* (*Rosanne Klovee* with him) for the defendant.

*Debra Grossman* (*Patricia M. Davis & John K. Leslie* with her) for the plaintiff.

GREANEY, J. This litigation involves complaints brought by the plaintiff, the former husband, against the defendant, his former wife, for modification of a judgment of divorce nisi and for contempt. We shall refer to the plaintiff as the father, and the defendant as the mother. We transferred the case to this court on our own motion to decide, among other questions, whether a qualified domestic relations order (QDRO) that required the mother to pay attorney's fees and costs (attorney's fees) to the father out of her retirement fund violated the QDRO exception to the antiassignment and antialienation provision of the Employment Retirement Income Security Act of 1974 (ERISA), see 29 U.S.C. § 1056(d)(3)(2000). We conclude that the QDRO was properly entered, but that the amount of funds specified therein must be recalculated. On other issues argued by the mother, we conclude that (1) the judge did not abuse her discre-.tion in the assessment of attorney's fees; (2) the exclusion of evidence offered by the mother at trial does not warrant a new trial; (3) the mother may move, if she chooses, to have the order concerning visitation reexamined in light of present circumstances; (4) the judge erroneously awarded the father sole ownership of property he removed from the former marital home; and (5) the mother was properly found in contempt.

The background of the case is as follows. The mother filed a

complaint in the Probate and Family Court seeking to terminate her eleven-year marriage to the father. Following the execution of a separation agreement, a judgment of divorce nisi entered on August 6, 1998. The separation agreement (with the express exception of the division of marital property) was integrated and merged in the judgment. The judgment of divorce nisi provided that the parties would share legal custody of their three minor children. The mother assumed primary physical custody of the children, with visitation granted to the father.[1]

In December, 1998, the father filed a complaint for modification, alleging that the mother had repeatedly interfered with his visitation, and requesting sole legal and physical custody of the children. In the complaint, the father stated that the children's school reported that the mother had removed the children for a two-week period and their whereabouts were unknown. The father also filed a complaint for contempt, alleging that the mother had violated the judgment of divorce nisi by (1) denying him visitation; (2) failing to sign the title of their Geo automobile over to him; and (3) failing to provide him with information needed to prepare their joint tax return. After a hearing, the father was granted temporary physical custody of the children and a capias issued for the mother's arrest. The father was also permitted to enter the former marital home to retrieve certain personal property that he claimed was needed to establish a home for the children.

In March, 1999, the mother was arrested in Texas, on parental kidnapping charges. (The charges were eventually dropped.) The father went to Texas, took custody of the children, and brought them back to Massachusetts. The mother unsuccessfully sought to regain custody. In July, 2000, the father's complaints for modification and contempt were tried together.

After the trial, the judge entered a modification judgment, followed by a statement of factual findings and conclusions that we now summarize. On or about December 12, 1998, the mother left Massachusetts in her automobile with the children. She did not obtain the father's consent to leave, or notify him that she

---

[1]Custody and visitation were conditioned on (1) the mother's participating in regular weekly therapy; and (2) the father's continuing in his weekly therapy.

was intending to remove the children from Massachusetts. The mother's destination was Texas, and she told the children that they would never see their father again. The judge did not find credible the mother's assertions that she was taking the children to Texas for a vacation or to conduct a job search there, and that the mother could not return to Massachusetts for over two months because she had trouble with her automobile. The judge found that the mother "had no intention of returning to Massachusetts with the children."

While in Texas, the children and the mother lived in a shelter. The children were registered in school under the mother's last name. When the father went to Texas to retrieve the children, he found one of his sons ill with strep throat and a fever of 105 degrees. The mother had not attended to his medical care.

The children incurred trauma as a result of the trip to Texas, living in a shelter, and being told that they would never see their father again. On returning to Massachusetts, the father engaged a therapist for the children. Each of the children suffered some form of posttraumatic stress disorder from the experience. The children no longer trusted their mother, believed that she had lied to them, and feared that if they were left with her, she would take them away again.

The children have made progress while living with their father and wish to continue living with him. The mother has failed to acknowledge the trauma she caused the children and blames the father for past behavior. The judge determined that the mother's contentions on the custody issues had been essentially refuted in the investigation conducted by the guardian ad litem (GAL). The judge concluded that the best interests of the children called for the father to have sole legal and physical custody.

The judge accepted the GAL's recommendation that the mother remain involved in the lives of her children in some manner. The judge explained that the children "will need a transition to incorporate the mother into their lives again. However, this must be done slowly and with great consideration. The children have only recently regained a sense of security, which must be protected at all costs. As a result, in order for there to be any contact between the mother and the children, it

must first begin with a family therapist, as more specifically set forth in the [m]odification [j]udgment." The modification judgment, as to this issue, contained the provisions set forth below.[2]

In the modification judgment, the judge also ordered that the father "shall have sole ownership of the property he removed from the former marital home . . . and the mother shall have no further claim to the said property." The judge directed that the mother pay child support in the amount of $90 a week to the father, as well as a specified amount of back child support. (We shall provide further background on the child support award subsequently when we decide the QDRO issue.) In addition, the judge ordered that the mother pay attorney's fees to the father's counsel in the amount of $44,465. She explained: "The father was forced to incur substantial fees and costs in locating the mother and children after she wrongfully removed the children from Massachusetts. Since the recovery of the children, the mother has been uncooperative in providing information in the process of discovery and unreasonable in her refusal to resolve this case without the necessity of trial, thereby causing the father to incur an inordinate amount of fees and costs in bringing this matter to a conclusion." The judge ordered:

---

[2]"(2) In order to enable [the mother] to have contact again with the three children, a child and family therapist . . . shall be designated to facilitate contact between the mother and the children. [The GAL] shall continue in [his] role as [GAL] and shall select the therapist and monitor the contact between the mother and children in the therapeutic setting and any later transition to visits outside of such a setting. The GAL shall work with the children's therapist . . . and the family therapist in arranging for such meetings between the children and the mother. The mother shall pay the cost of the GAL and the cost of the family therapy.

"(3) The therapist shall first meet alone with the mother and then with the children. No meetings with the children shall be arranged until the mother has seen the therapist alone for as many sessions as he/she deems appropriate. Thereafter, the therapist shall arrange for times for both mother and children to meet together. As the meetings progress, the therapist shall contact the [GAL] to report on the progress of the meetings. The therapist shall determine when the children are ready to visit with the mother outside the therapeutic sessions. The initial visits outside of the sessions shall be supervised until the family therapist, the children's therapist, and the GAL determine that unsupervised visits are appropriate. The children's adjustment to these visits shall be monitored by the GAL, their individual therapist, and the father. The mother shall not at any time discuss with the children the issue of custody or taking the children away with her."

"Payment of the attorneys' fees and costs shall be effected through a transfer of the [retirement] funds currently held for the benefit of the mother under an account . . . in the amount of $55,000. The increase of some $11,000 over and above the award of fees and costs gives some consideration to the tax consequences and penalties which may be incurred in the event the father liquidates any portion of the transferred funds. Counsel for the father shall prepare a [QDRO] for approval by the [c]ourt so that the funds can be transferred within the next 30 days. The [c]ourt shall at that time release from the [t]rustee [p]rocess sufficient funds to allow for the transfer."

The judge entered a separate judgment of contempt for the mother's failure to comply with the terms of the judgment of divorce nisi permitting the father visitation with the children, requiring the parties to file their 1997 joint tax return within twenty-one days of the entry of the judgment of divorce nisi, and requiring the mother to "promptly sign over the title" of the parties' Geo automobile to the father after he paid the few remaining car payments. Thereafter, another probate judge approved a QDRO in the amount of $55,000 to effect payment of the father's attorney's fees.

1. We reject the mother's arguments that the judge erred in setting the amount of attorney's fees and lacked authority to enter the attorney's fees QDRO.

(a) As long as an award of attorney's fees is "not incommensurate with an objective evaluation of the services performed . . . '[t]he award of such costs generally rests in sound judicial discretion. . . . [T]he award . . . may be presumed to be right and ordinarily ought not to be disturbed.' " *Ross* v. *Ross*, 385 Mass. 30, 38-39 (1982), quoting *Smith* v. *Smith*, 361 Mass. 733, 738 (1972). Our review of the affidavits submitted by the father's counsel discloses that the judge's award reflects approximately seventy per cent of the actual fees and costs incurred, thus demonstrating the judge's consideration of the issues raised by the mother, including the disparity of the parties' income. The attorney's fees sought, contrary to the mother's contention, were commensurate with the services performed, and significantly, those fees were

awarded in connection with *both* the modification judgment and the contempt judgment, thus embodying an award that simultaneously granted reimbursement to the father and sanctioned the mother. See *Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 192, 197 (1986). The judge also correctly ordered that accommodation should be made for the tax consequences resulting from the liquidation of some of the mother's retirement assets. Cf. *Rice* v. *Rice*, 372 Mass. 398, 402 & n.4 (1977) (if raised, tax consequences of marital distribution should have been considered by judge); *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 866 (1989) (appropriate to consider and minimize tax consequences when apportioning marital assets). Finally, the judge did not commit an abuse of discretion in declining to grant the mother an evidentiary hearing. See *Ross* v. *Ross*, *supra* at 38. The judge gave the mother adequate opportunity to address the issue of attorney's fees and costs in a written submission, and the mother did so. Thus, the award of attorney's fees and costs for the litigation under consideration was proper.

(b) We turn now to the disputed QDRO. Some additional background will be helpful. In her findings of fact, the judge determined that the father had been supporting the children since March, 1999, when they returned with him from Texas. Because the mother had been able to pay, but had not paid, child support since September, 1999, the judge concluded that the mother owed back child support of $5,000, and the judge ordered that the arrearages be paid at the rate of $25 a week. The modification judgment, therefore, called for weekly payments of child support by the mother in the amount of $115 ($90 a week current support and $25 a week to liquidate the arrearages). The judge directed that a portion of the mother's monthly retirement fund income be paid as security for child support.[3] A wage assignment was entered, and, it appears, a separate QDRO to effect the payment of child support. Neither the wage assignment nor the child support QDRO are in issue in this appeal. Thereafter, the QDRO with which we are concerned was entered to reimburse the father for his attorney's fees.

[3]At the time of the trial, the mother's employment contract had not been renewed and her only asset of significant value was her retirement account. The judge, however, found her capable of employment and imputed a yearly salary to her.

An explanation of the law governing QDROs in the domestic relations context is now in order. Under Federal law, ERISA-governed pension plans[4] "shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). This provision of ERISA is known as the antiassignment and antialienation provision. The provision is intended to "protect an employee from his own financial improvidence in dealing with third parties." *Hawkins* v. *Commissioner of Internal Revenue*, 86 F.3d 982, 988 (10th Cir. 1996), quoting *American Tel. & Tel. Co.* v. *Merry*, 592 F.2d 118, 124 (2d Cir. 1979).

In 1984, Congress passed the Retirement Equity Act of 1984 (REA), which amended ERISA to provide an exemption for a "qualified domestic relations order," or a "QDRO." REA, Pub. L. No. 98-397, § 104(a), 98 Stat. 1433 (1984). See 29 U.S.C. § 1056(d)(3)(A). The term "qualified domestic relations order" is defined in ERISA as "a domestic relations order . . . which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." Pub. L. No. 98-397, § 104(a), *supra.* See 29 U.S.C. § 1056(d)(3)(B)(i)(I). A "domestic relations order" is "any judgment, decree, or order (including approval of a property settlement) which — (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and (II) is made pursuant to a State domestic relations law." Pub. L. No. 98-397, § 104(a), *supra.* See 29 U.S.C. § 1056(d)(3)(B)(ii). The REA also amended ERISA to clarify that QDROs are exempt from ERISA's preemption provision. See Pub. L. No. 98-397, § 104(b), 98 Stat. 1436 (adding paragraph [b][7] to § 1144 of ERISA). The QDRO in this case was entered in reliance on these provisions.

The mother argues that the judge had no authority to enter the attorney's fees QDRO because the QDRO does not "relate to child support, alimony or marital property rights." The mother also asserts that the QDRO is invalid because no State law authorizes "a levy on retirement assets to pay attorney[']s fees

---

[4]There is no dispute that ERISA applies to the mother's retirement fund.

imposed not as an adjunct to support but as a penalty related to custody litigation." The mother maintains that the attorney's fees were incurred "not to facilitate the collection of child support[,] but essentially as a sanction . . . for her actions in the course of the [change of custody] litigation," and as such fall outside of the QDRO exception to ERISA.

The issue of the validity of a QDRO to recover attorney's fees is one we have not decided. ERISA itself does not expressly permit an assignment of retirement funds pursuant to a QDRO to satisfy an award of attorney's fees. The requirement that a QDRO "relate to" alimony, child support, or the division of marital property seeks to ensure that assets protected under ERISA will be used for the benefit of a former spouse or a dependent, and then only for specified purposes. Necessarily implicit, however, in the Federal law's recognition of a QDRO is authorization for the reimbursement of attorney's fees incurred in obtaining a proper order. Were it otherwise, a former spouse or party who succeeded in obtaining an appropriate QDRO would have the order reduced by the necessity of paying attorney's fees. In some circumstances, a former spouse or party might even forgo seeking a needed QDRO because of the prohibitive nature of unreimbursed attorney's fees. These results would undermine the intent of Congress in establishing the QDRO exception by denying deserving parties and children a recovery to which they are entitled.

In *Guidry* v. *Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376-377 (1990), the United States Supreme Court held that the antialienation provision of ERISA cannot be pierced by the imposition of a constructive trust to attach payment of retirement funds due a union official who had embezzled a substantial amount of union funds. The constructive trust was sought to prevent the official from benefiting from his misconduct that had damaged the viability of the union and its members' pension plans. In rejecting the constructive trust remedy, the Court expressly held that equitable considerations, no matter how compelling, could not be used to override the antialienation provision of ERISA. The Court's decision explicated the principle that an exception to ERISA's antialienation provision, such as the QDRO exception, must be

strictly construed. As the Court stated: "As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision [namely, the antialienation provision of ERISA]. Such a provision acts, by definition, to hinder the collection of a lawful debt." *Id.* at 376.

The decisions that have dealt with QDROs for the payment of attorney's fees in domestic relations disputes have upheld the QDRO only in the context of claims for the collection of past due spousal or child support. See *Trustees of the Directors Guild of America-Producer Pension Benefits Plan* v. *Tise*, 234 F.3d 415, 426 (9th Cir. 2000), amended, 255 F.3d 661, 662 (9th Cir. 2001) (approving distribution of pension plan proceeds pursuant to QDRO that awarded child support arrears and attorney's fees incurred in enforcing prior child support order); *Navarro* v. *Olivarez*, 188 Cal. App. 3d 336, 339-340, 344-345 (1986) (affirming order of award of attorney's fees and costs from husband's pension benefits that were incurred in connection with order for spousal support arrearages); *Renner* v. *Blatte*, 170 Misc. 2d 579, 583 (N.Y. Sup. Ct. 1996) (approving QDRO that awarded counsel fee arrears that related to child support and maintenance); *Adler* v. *Adler*, 224 A.D.2d 282 (N.Y. 1996) (affirming entry of QDRO to enforce money judgments for attorney's fees incurred by plaintiff in attempt to compel defendant's compliance with child support obligations contained in settlement agreement incorporated but not merged into parties' divorce judgment). These decisions also have routinely approved the use of a QDRO to permit the recovery of attorney's fees in connection with the enforcement of an existing order for spousal or child support.[5] Admittedly, in these decisions, the collection of past due support was the principal matter in issue,

---

[5] The decisions relied on by the mother to dispute the father's right to the QDRO are inapposite because they involve orders to improper alternate payees, namely, ordering employee pension benefit plans to pay fees directly to attorneys. See *AT&T Mgt. Pension Plan* v. *Tucker*, 902 F. Supp. 1168, 1170 (C.D. Cal. 1995); *Johnson* v. *Johnson*, 320 N.J. Super. 371, 374-375 (1999). Pursuant to the QDRO exception to ERISA's spendthrift provision, only an "alternate payee" may be the beneficiary of a QDRO. 29 U.S.C.

but the decisions are instructive nonetheless because they apply, in practice, a strict construction approach.

In this case, we have orders that (a) modify the judgment of divorce nisi to change custody of the children from the mother to the father; (b) adjudicate, and make provision for, the mother's payment of $5,000 in back child support; and (c) adjudicate, and make provision for, the mother's payment of on-going child support. The latter order concerning future child support is not before us, but because the mother's financial circumstances made compliance with the order possibly problematic, the order was secured by a wage assignment and, it appears, a separate child support QDRO. We mention this because, even though the wage assignment and child support QDRO are not in issue, in a domestic relations case, where orders of custody and child support are made, and the parent against whom the support order is entered has *no other assets* beyond his or her retirement fund to comply with the order, a QDRO to ensure payment would be appropriate under the "relates to" language of the exception. Otherwise, a basic purpose of the QDRO exception — to ensure the payment of spousal and child support — would be frustrated, perhaps necessitating provision for the needs of the spouse and children out of public funds.[6]

We conclude that the QDRO in this case is permissible, but overbroad. The father is entitled to the benefit of a QDRO to recover attorney's fees in connection with his work related to the order establishing back child support owed by the mother because that order collects arrearages. The amount stated in the QDRO must be recalculated to allow an award of attorney's fees for only those services. The father's attorney's time spent on other aspects of the case (obtaining custody, preparing a

§ 1056(d)(3)(B)(i)(I). The term "alternate payee" is defined as "any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." *Id.* at § 1056(d)(3)(K). The alternate payee here is the father, and there is no dispute that he is a proper payee.

[6]This reason, and others, may explain why the mother has not contested on appeal the wage assignment against periodic payments to her from her retirement fund, and the child support QDRO that appears to have entered.

submission to the GAL, establishing a case of contempt and providing numerous other services) cannot be included in the QDRO because they do not relate to the "provision of child support, alimony payments, or marital property rights." In summary on this part of the case: the over-all award of attorney's fees was properly handled and appropriate as to amount. The QDRO, however, will be vacated because the sum included therein represents attorney's fees for matters outside the scope of the QDRO exception. The father may petition the Probate and Family Court for the approval of a new QDRO, limited to the attorney's fees attributable to the past child support order.[7]

2. We reject the mother's contention that a new trial is required because the judge excluded a letter and testimony allegedly challenging the father's assertion that he was not told of her Texas trip. There was no error. The main points of the letter written by the mother concerning her intention to travel to Texas were covered in the mother's testimony. The principal point of a reply letter from the father was also before the judge in the mother's testimony.

3. There was ample support in the record for the judge's imposition of restrictions on the mother's visitation with the children, and the restrictions, see note 2, *supra*, with one exception, fell within the judge's discretion, see *Vilakazi* v. *Maxie*, 371 Mass. 406, 409 (1976). That exception conditions the mother's visitation on individual therapy sessions between the mother and a therapist "for as many sessions as [the therapist] deems appropriate."

This provision, conceivably, could result in the improper termination of the mother's right to visitation in the absence of "specific findings demonstrating that parental visits will harm the child[ren]." See *Custody of a Minor (No. 2)*, 392 Mass. 719, 726 (1984); *Care & Protection of Ian*, 46 Mass. App. Ct. 615, 619-620 (1999). No such findings have been made. In fact, the judge found exactly the opposite, concluding that it "is important for the children to have the mother returned to their lives in some manner." Further, it is the judge who is charged

---

[7]The mother's other arguments on why the QDRO was improper (e.g., that it constituted a sanction, that it lacked a basis in State law) are not meritorious, and we reject them.

with making specific findings on the issue of visitation. The therapist should not have sole authority to determine the matter. See *Custody of a Minor (No. 2)*, *supra*. If the mother petitions, the issue of visitation should be reexamined by a judge in light of present circumstances including the mother's progress in her therapy.

4. We agree with the mother that the modification judgment erroneously awarded the father "sole ownership of the property he removed from the former marital home."

In the separation agreement, the parties jointly stipulated to the distribution of marital property, provided that the distribution was final, and expressly excepted this aspect of the agreement from "merging" in the judgment of divorce nisi. Thus, the provisions of the separation agreement (and judgment of divorce nisi) concerning distribution of marital property remain an independent contract between the parties, which the judge could not alter. See G. L. c. 208, § 1A ("The agreement either shall be incorporated and merged into said judgment or by agreement of the parties, it shall be incorporated and not merged, but shall survive and remain as an independent contract"). See also *Heins* v. *Ledis*, 422 Mass. 477, 483 (1996) ("Property settlements are designed largely to effectuate a final and complete settlement of obligations between the divorcing spouses. While alimony is modifiable on the showing of a material change in circumstance . . . property settlements are not"); *Mansur* v. *Clark*, 25 Mass. App. Ct. 618, 620 (1988), and cases cited (explaining that it is "undisputed that a court has no authority to modify the obligations voluntarily undertaken by the parties to a separation agreement"). We decline to order an "offset" for the mother from her "obligations" to remedy the error. The matter of the appropriate remedy in the circumstances is more appropriately left for consideration by a probate judge.

5. There was sufficient evidence to justify a finding of contempt for the mother's failure to cooperate in the filing of the 1997 joint tax return and her failure to transfer title to the Geo automobile.

6. The judgment of contempt is affirmed. So much of paragraph 3 of the modification judgment that conditions the mother's visitation on individual therapy sessions between the

mother and a therapist "for as many sessions as [the therapist] deems appropriate" is vacated. So much of paragraph 9 of the modification judgment that awarded the father "sole ownership of the property he removed from the former marital home" is also vacated. The remainder of the modification judgment is affirmed. The QDRO is vacated. The case is remanded to the Probate and Family Court for further proceedings consistent with this opinion. The father's attorney may apply to a single justice of this court for an award of attorney's fees for work on the appeal that may be entitled to such reimbursement.

*So ordered.*