2 A.3d 1095

Sharon ROOSEVELT

v.

Mehmet Yavuz CORAPCIOGLU.

No. 156, Sept. Term, 2008.

Court of Appeals of Maryland.

Aug. 25, 2010.

Alice Pare–Johnson (Alice Pare–Johnson, P.C. of Germantown, MD), on brief, for Appellant.

Barbara E. Palmer (Joseph, Greenwald, & Laake, P.C. of Greenbelt, MD), on brief, for Appellee.

Argued before BELL, C.J. HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

MURPHY, J.

In the Circuit Court for Montgomery County, Sharon Roosevelt, Appellant, sought a Qualified Domestic Relations Order (QDRO) to enforce a judgment of attorney's fees and costs that had been entered in her favor and against Mehmet

**436**

Corapcioglu, Appellee.[1] The Circuit Court denied that request, and Appellant noted an appeal to the Court of Special Appeals, presenting a single issue for review:

Whether the state law definition of "child support" as an ongoing obligation pursuant to [Sections] 12–200 et seq. [of the Family Law Article (FL)] is appropriately used to determine whether an entitlement or right awarded to a dependent of a participant, pursuant to a domestic relations order, impermissibly frustrates the preemption provision and the limited exception to the anti-alienation clause provided for by [ERISA].

Prior to argument before a panel of the Court of Special Appeals, this Court issued a writ of certiorari on its own initiative. 406 Md. 744, 962 A.2d 371 (2008). For the reasons that follow, we hold that the Maryland definition of child support is applicable to the determination of whether Appellant was entitled to a QDRO. We shall therefore affirm the judgment of the Circuit Court.

### Background

The parties are the parents of a son who was abducted and taken to Turkey by Appellee. Appellant's request for a QDRO stems from a judgment that she obtained against Appellee for attorney's fees and costs that she incurred in her successful effort to have the child returned to her custody. That judgment was affirmed by the Court of Special Appeals in *Corapcioglu v. Roosevelt,* 170 Md.App. 572, 907 A.2d 885 (2006) (*"Corapcioglu I "*). While affirming the judgment, the Court of Special Appeals stated:

In the case at bar, notwithstanding that the expenses incurred by Mother to return [the child] to her custody might have benefited him, the expenses were not child support under Maryland law; rather, they were costs incurred by Mother in prosecuting the child support action by seeking enforcement of the court's custody order, including by pur-

---

**1.** Because no prior appellate decision has been rendered in the case at bar, the designation of the parties is controlled by Md. Rule 8–111(a)(1).

suing Hague Convention litigation in Turkey and by retaining experts in foreign abductions to locate [the child] and attempt to gain his release. The hearing court did not err by ruling that its award of fees and costs incurred by Mother in rescuing [the child] from Turkey was not child support, or in the nature of child support, under Maryland law.

*Id.* at 592, 907 A.2d at 897.

In her "Motion for Qualified Domestic Relations Order," Appellant included the following assertions:

3. The outstanding Judgments in this matter are issued pursuant to a domestic relations order as defined by 29 U.S.C. 1056(d)(3)(B) et seq. [Appellant] requests that the Judgments, issued pursuant to Maryland Domestic Relations Law, be qualified in the form of a Qualified Domestic Relations Order. [ ]

4. For the reasons explained in the attached Memorandum, federal law controls the determination as to whether fees qualify as child support, and therefore are collectible from an ERISA qualified pension plan through a Qualified Domestic Relations Order (QDRO). [ ] In the instant case, federal law supports the issuance of a QDRO.

5. The [Appellee] has a retirement pension and other retirement benefits through TIAA–CREF. The [Appellee] has reached his earliest retirement age and is eligible to receive funds from his pension plan. ERISA allows child support to be paid through a pension and retirement benefits. Child support may be paid through a Qualified Domestic Relations Order pursuant to IRC § 414(p) and 29 U.S.C. 1056(d).

On March 28, 2008, a Circuit Court Domestic Relations Master held a hearing on the motion, at the conclusion of which the Master stated:

I don't think the Federal Bankruptcy Court cases apply[ ] here. The Bankruptcy Courts have their own purposes within the meaning of the Federal Bankruptcy Statute and Regulations. What is child support or in the nature of child

support within the meaning of the Federal Bankruptcy Statute and Regulations, is different than what the Maryland Courts determine is child support, as far as attorney's fees.

\* \* \*

Well, I don't find that these meet the exception to allow the establishment of a qualified domestic relations order, and I recommend that the motion for qualified domestic relations order . . . be denied.

Appellant filed "Exceptions to Master's Findings and Recommendations," in which she argued as follows:

3. The Master erred and was otherwise clearly erroneous when he concluded that the Qualified Domestic Relations Order requested was not available. The Master found that Maryland's definition of child support was the basis upon which the issuance of a QDRO should be determined. Whether a QDRO should issue is properly a matter of federal law, not state law. To allow the Maryland definition of child support to control will result in unequal application of federal law from state to state.

4. [ ]. ERISA has an express preemption clause that is intended to protect the stated purpose of uniform application from state to state.

\* \* \*

6. For the reasons explained in the Memorandum that will be filed forthwith, federal law controls the determination as to whether fees qualify as child support in this matter, and therefore are collectible from an ERISA qualified pension plan through a Qualified Domestic Relations Order (QDRO). [ ] In the instant case, federal law supports the issuance of a QDRO.

7. The [Appellee] has a retirement pension and other retirement benefits through TIAA–CREF. The [Appellee] has reached his earliest retirement age and is eligible to receive funds from his pension plan. ERISA allows child support to be paid through a pension and retirement benefits. Child support may be paid through a Qualified Domes-

tic Relations Order pursuant to IRC § 414(p) and 29 U.S.C. 1056(d).

On June 3, 2008, the Circuit Court held a hearing on Appellant's exceptions. In a Memorandum Opinion and Order filed on June 11, 2008, while denying Appellant's request for a QDRO, the Circuit Court stated:

> State law, not federal bankruptcy guidelines, defines "child support" in Maryland. The Court of Appeals in *Goldberg* [*v. Miller*, 371 Md. 591, 810 A.2d 947 (2002) ], clearly stated that "[f]ederal bankruptcy law does not, in any way, bind this Court in making decisions regarding matters of state law." 371 Md. at 610[ n. 8, 810 A.2d at 958 n. 8]. The *Goldberg* Court explained that the policy considerations of bankruptcy law are unique to the interpretations of the bankruptcy code and are not necessarily analogous to state policy concerns. *See id.*
>
> * * *
>
> .... The *Goldberg* Court concluded that the General Assembly, not federal law, was left as the "guiding authority for matters of child support in Maryland." *Id.* at 612[, 810 A.2d at 959]. Therefore, it follows that federal bankruptcy law does not define what constitutes child support in the state of Maryland. Attorney's fees and costs are not among the enumerated factors of the Maryland child support guidelines, and this Court will not create such a factor in the absence of legislative authority.

As stated above, after Appellant noted an appeal to the Court of Special Appeals, this Court issued a writ of certiorari on its own initiative.

## Discussion

 Appellant argues (in the words of her brief):

Child support is not defined [in ERISA], and therefore must be given its plain meaning. ERISA preempts state law, therefore, the meaning of child support that must be used is the meaning used in federal law. A review of federal bankruptcy case law clearly establishes that child support

includes costs and fees incurred enforcing a child custody order. *Silverman v. Spiro* [, 438 Mass. 725, 784 N.E.2d 1 (2003) ], holds that "child support" includes costs incurred pursuing custody of a child. For purposes of determining whether an entitlement awarded to Appellant is enforceable through a QDRO, it must be determined whether the "entitlement" "relates to" child support, as intended within ERISA.

We disagree with that argument. FL § 12–103, in pertinent part provides:

(a) *In general.*—The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; or

(2) files any form of proceeding:

(i) to recover arrearages of child support;

(ii) to enforce a decree of child support; or

(iii) to enforce a decree of custody or visitation.

ERISA, (the Employee Retirement Income Security Act of 1974), in pertinent part, provides:

(i) the term "qualified domestic relations order" means a domestic relations order—

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirements of subparagraphs (C) and (D) are met, and

(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—

**(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and**

**(II)** is made pursuant to a State domestic relations law (including a community property law).

29 U.S.C. § 1056(d)(3)(B) (emphasis added). "The term 'alternate payee' means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." § 1056(3)(K).

█ QDROs are exempted from ERISA's preemption provisions. 29 U.S.C.S. § 1144, in pertinent part, provides:

(a) Supersedure; effective date. Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C.S. § 1003(a)] and not exempt under section 4(b) [29 U.S.C.S. § 1003(b)]. This section shall take effect on January 1, 1975.

(b) Construction and application.

(7) Subsection (a) shall not apply to qualified domestic relations orders (within the meaning of section 206(d)(3)(B)(i) [29 U.S.C.S. § 1056(d)(3)(B)(i)]), qualified medical child support orders (within the meaning of section 609(a)(2)(A)) [29 U.S.C.S. § 1169(a)(2)(A)], and the provisions of law referred to in section 609(a)(2)(B)(ii) [29 U.S.C.S. § 1169(a)(2)(B)(ii)] to the extent they apply to qualified medical child support orders.

29 U.S.C.S. § 1144.

In *Rohrbeck v. Rohrbeck*, 318 Md. 28, 566 A.2d 767 (1989), this Court included the following analysis from both the House Ways and Means and Senate Finance Committee Reports:

"Under the bill, if a domestic relations order requires the distribution of all or a part of a participant's benefits under a qualified plan to an alternate payee, then the creation, recognition, or assignment of the alternate payee's right to the benefits is not considered an assignment or alienation of benefits under the plan *if and only if* the order is a qualified domestic relations order. Because rights created, recog-

nized, or assigned by a qualified domestic relations order, and benefit payments pursuant to such an order, are specifically permitted under the bill, State law providing for these rights and payments under a qualified domestic relations order will continue to be exempt from Federal preemption under ERISA."

H.Rep. No. 655 at 18; S.Rep. No. 575 at 19, U.S.Code Cong. & Admin.News 1984, pp. 2547, 2565 (emphasis added).

*Id.* at 33, 566 A.2d at 769–70.

In *Goldberg v. Miller*, 371 Md. 591, 810 A.2d 947 (2002), while holding that the Circuit Court did not have authority to characterize guardian *ad litem* fees as child support, this Court stated:

One provision under Title 12 of the Family Law Article provides for an award that may not be treated as child support, however. Section 12–103(a) allows the court, at its discretion, to award counsel fees to "either party" of a domestic case where issues of child support, custody, or visitation are involved. Code, § 12–103(a) of the Family Law Article. Section 12–103(a), though, does not concern attorney's fees that a court may award to a guardian *ad litem*. *See Petrini* [*v. Petrini* ], 336 Md.[453] at 467–68, 648 A.2d [1015]at 1022–23 [ (1994) ]. Rather, it refers to any counsel fees accrued by one party in applying for or defending a matter involving child support, child custody, or visitation. Code, § 12–103(a) of the Family Law Article. The party, therefore, rather than the child, receives the immediate benefit from an award under this section, unlike the expenses the Legislature addressed under Section 12–101(d)(ii), which governs medical support and neonatal expenses, and Section 12–102(b), which governs orders to required health insurance coverage for a child. Thus, courts may not treat an award under Section 12–103(a) as child support.

\* \* \*

Goldberg relies heavily on the bankruptcy court's determination that, for purposes of bankruptcy law, attorney's

fees are "in the nature of child support" and, therefore, not dischargeable debts. *In Re Blaemire,* 229 B.R. 665 (Bankr. D.Md.1999). He argues:

It would seem incongruous to suggest that a judgment for the fees of a guardian *ad litem* will not be discharged in Bankruptcy because they are in the nature of child support, but, at the same time, may not be collected from the judgment debtor because under state decisional authority they are not in the nature of child support.

[ ]. We reject this argument because it fails to consider the consequences of allowing guardian *ad litem* fees to be treated as child support under Maryland law. The policy consequence that we find most persuasive is that such a characterization could subject an obligated parent to potential imprisonment under the court's contempt powers.

*Id.* at 606–609, 810 A.2d at 956–58.

In *Silverman v. Spiro,* 438 Mass. 725, 784 N.E.2d 1 (2003), the father of three children sought a QDRO to recover counsel fees incurred in his efforts to (1) obtain custody of the children after their mother took them from Massachusetts to Texas, and (2) obtain back child support owed by the mother, who opposed the father's request on the ground that the "attorney's fees were incurred 'not to facilitate the collection of child support, but essentially as a sanction . . . for her actions in the course of the [change of custody] litigation,' and as such fall outside of the QDRO exception to ERISA." *Id.* at 7. While holding that the father's entitlement to a QDRO was limited to counsel fees incurred in obtaining child support, the Supreme Judicial Court of Massachusetts stated:

The father is entitled to the benefit of a QDRO to recover attorney's fees in connection with his work related to the order establishing back child support owed by the mother because that order collects arrearages. . . . The father's attorney's time spent on other aspects of the case (obtaining custody . . .) cannot be included in the QDRO because they do not relate to the "provision of child support, alimony payments, or marital property rights."

*Id.* at 9. We agree with that analysis, which is consistent with our holdings in *Rohrbeck* and *Goldberg*. Under Maryland law, Appellant is not entitled to a QDRO to enforce the judgment entered for counsel fees and costs that she incurred in obtaining the child's return from Turkey.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**