NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2969-16T4

JOANNA B. ORLOWSKI,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

ROBERT ORLOWSKI,

    Defendant-Appellant/
    Cross-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **May 7, 2019**
>
> **APPELLATE DIVISION**

Argued April 2, 2019 – Decided May 7, 2019

Before Judges Fisher, Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1778-14.

Robert Orlowski, appellant/cross-respondent, argued the cause pro se (Cores & Associates, LLC, attorney; Amy S.Cores, on the briefs).

Stephen H. Roth argued the cause for respondent/cross-appellant.

The opinion of the court was delivered by

GEIGER, J.A.D.

In this post-judgment matrimonial appeal, we consider whether a court may compel reimbursement of college tuition, forensic accountant's fees, and counsel fees, through an enhanced wage garnishment and a Qualified Domestic Relations Order (QDRO) against the obligor's individual annuity account funds on deposit in an annuity governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 to 1461. We hold that unpaid awards for counsel fees and expert witness fees relating to child support, property distribution, and college tuition reimbursement are enforceable by QDRO from ERISA protected pension funds when an ex-spouse is the alternative payee of the QDRO. We further hold the counsel fee judgments relating to child and spousal support are enforceable through an enhanced wage garnishment.

I.

The complex procedural history underlying this appeal necessitates a brief review of the proceedings that led to the arrearages owed to plaintiff Joanna B. Orlowski, her enforcement efforts, and defendant Robert Orlowski's bad faith, unclean hands, frivolous litigation in both state and federal court, and willful, sustained failure to comply with court orders.

Before we discuss the pertinent facts and procedural history, we note defendant appealed numerous orders and directed our attention to several

2

alleged trial court errors. Defendant's appeal, however, was dismissed for failure to timely file a brief, so we do not consider those issues. Accordingly, our review of the facts and procedural history is limited to those relevant to plaintiff's cross-appeal.

Defendant is a member of the International Union of Operating Engineers Local 14-14B (the Union). The Union administers a pension fund known as the Annuity Fund of the International Union of Operating Engineers Local 14-14B (the Annuity). Defendant has substantial ERISA protected funds in his individual annuity account (the annuity funds) with the Annuity.

The parties were married in May 1993 and had two sons. Plaintiff's 2014 divorce action was finalized in 2016. The amended final judgment of divorce (amended judgment) required defendant to pay his child support obligations by wage garnishment.

The amended judgment incorporated the parties' "partial" property settlement agreement (PSA), which addressed the equitable distribution of various marital assets, including the former marital residence and a 401(k) investment account. The PSA also provided that plaintiff waived her claim for alimony in exchange for a non-taxable lump sum payment of $120,000. Notably, the PSA did not resolve equitable distribution of the annuity funds and

3

plaintiff's IRA. The parties' mediator authored a supplemental letter to the PSA that addressed certain child support and tax issues, and stated two issues remained unresolved: (1) counsel fees; and (2) any claims or credits relating to the fees incurred for the forensic accountant used to investigate the parties' reciprocal claims of dissipation of marital assets.

In a written opinion, the trial court explained the forensic accountant's report demonstrated defendant could not account for $118,175 in marital funds. On the other hand, the trial court found defendant did not demonstrate plaintiff dissipated marital funds. As a result, plaintiff was successful in her dissipation claim. The court reallocated responsibility for $5000 of the fees charged by the forensic accountant from plaintiff to defendant for services related to defendant's meritless dissipation claim.

As for counsel fees, the trial court recognized defendant's greater annual income, assets, and lesser debt relative to plaintiff. It noted plaintiff moved three times for enforcement of prior court orders and served sixteen subpoenas to obtain discovery, which defendant obstructed. The court also stated the case featured an "extensive litigious history" and plaintiff's dissipation claim was successful, whereas defendant's was unsubstantiated.

4

Based on these findings, the trial court awarded plaintiff: one-half of the marital assets dissipated by defendant to be paid from defendant's annuity account via a QDRO; $5000 as reimbursement for fees paid to the forensic accountant due to defendant's meritless dissipation claim; and $48,194.98 for counsel fees. Defendant was further ordered to pay $1150 to the mediator.

Thereafter, defendant refused to comply with the PSA and subsequent court orders. His obstinance prompted plaintiff to move for enforcement in April, May, September, and December of 2016.[1] All of plaintiff's enforcement motions were granted, at least in part. Of note, on December 15, 2016, the trial court partially granted plaintiff's enforcement motion by: (1) entering judgment against defendant in the amount of $5000 for failure to pay the forensic accounting fee reimbursement; (2) imposing a wage execution to collect the previously ordered and unpaid $48,194.98 in counsel fees; and (3) awarding plaintiff attorney's fees incurred after March 31, 2016, relating to her

---

[1] Remarkably, in the midst of the 2016 enforcement motion practice, defendant advised the court he transferred all of his assets, including the marital residence and annuity funds, to a self-executed trust. This precipitated the entry of a supplemental QDRO to enforce, by rollover, the $119,500 equitable distribution settlement owed to plaintiff pursuant to the PSA.

A-2969-16T4

enforcement motions and her successful defense of an order to show cause filed by defendant, in an amount to be determined.

Defendant remained noncompliant. Plaintiff sought enforcement of the prior orders, including payment of the previously awarded counsel fees, from defendant's annuity funds through a QDRO. The trial court declined to enforce the counsel fee arrearages "as alimony, by QDRO."

In March 2016, defendant filed two petitions with the United States District Court for the District of New Jersey to remove the case to federal court. On March 8 and 10, 2016, the District Court remanded the case to the Superior Court sua sponte.

Defendant also filed a federal civil rights action against sixteen defendants, including plaintiff, her attorney, the forensic accountant, the mediator, Governor Christie, three Superior Court judges, and plaintiff's former attorney. The defendants named in the action moved to dismiss the complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and for sanctions. District Court Judge Susan D. Wigenton dismissed the action with prejudice but denied the application for sanctions.

A-2969-16T4

Incredibly, in May 2016, defendant filed yet another application for removal, which the District Court denied. The District Court also prohibited defendant from filing any additional pleadings without permission of the court.

On May 30, 2017, the trial court awarded plaintiff counsel fees of $63,786.50 for the post-March 31, 2016 state court proceedings. The court explained that plaintiff had to file several motions to enforce the terms of the PSA. It recognized defendant acted in bad faith throughout the litigation by engaging in efforts to prevent the enforcement of the amended judgment, PSA, and subsequent orders.[2] The court also noted defendant earned a much higher income than plaintiff and carried a balance of $395,334 in annuity funds.

Plaintiff moved to enforce litigant's rights and for sanctions due to defendant's refusal to pay the $131,495.48 she seeks on appeal. The trial court ordered defendant to pay his portion of the college tuition expenses but declined to impose coercive sanctions. The trial court declined to impose an enhanced wage garnishment to collect unpaid counsel fee awards and the forensic

---

[2] In addition to dissipating and transferring marital assets to a trust, defendant also routinely submitted baseless filings that generated otherwise unnecessary counsel fees and delayed enforcement of plaintiff's rights. For example, defendant filed meritless motions for recusal of the trial judge, to dismiss plaintiff's applications for want of subject-matter jurisdiction, and for leave to appeal.

A-2969-16T4

accountant fee reimbursement. Although the court stated on the record that an enhanced wage garnishment would be established against defendant for the college tuition reimbursement, the order does not reflect that an enhanced wage garnishment was ordered. The lump sum amount of $14,514 was added to defendant's child support obligations, representing his college tuition responsibility. A subsequent March 23, 2018 amended order provided defendant's disposable earnings would be garnished at fifty-five percent pursuant to 15 U.S.C. § 1673 and reiterated that the $14,514 college tuition reimbursement was added to defendant's child support obligation.[3]

Defendant's appeal, ultimately dismissed, and plaintiff's cross-appeal followed. Plaintiff cross-appealed certain aspects of several orders. She argues: (1) the trial court erred by not enforcing the counsel fee judgments and college tuition award through a QDRO against defendant's annuity funds; and (2) the trial court erred by not enforcing the counsel fee judgments by an enhanced wage garnishment. Plaintiff contends that she will be unable to enforce the counsel and expert fee awards absent a QDRO due to defendant's manipulation of his

---

[3] 15 U.S.C. § 1673(b)(2)(A) allows the court to garnish fifty-five percent of an employee's disposable income, if the employee is supporting a child or spouse and the wage garnishment is related to past due child support, spousal support, or unpaid taxes.

assets. She argues she is entitled to this remedy as a matter of equity to prevent the injustice she would otherwise suffer.

## II.

ERISA was enacted by Congress to protect employees and their dependents who rely on retirement plans. Hawxhurst v. Hawxhurst, 318 N.J. Super. 72, 82-83 (App. Div. 1998). The primary safeguard is ERISA's "broadly worded preemption clause which establishes the regulation of pension plans 'as exclusively a federal concern.'" Id. at 83 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)). ERISA also safeguards pension funds through its "spendthrift" provision, which mandates each pension plan contain an anti-alienation provision that prohibits the assignment or alienation of pension benefits. 29 U.S.C. § 1056(d)(1). "Assignment or alienation" is defined as "[a]ny direct or indirect arrangement . . . whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of the plan benefit payment which is, or may become, payable to the participant or beneficiary." Hawxhurst, 318 N.J. Super. at 84 (alterations in original) (quoting 26 C.F.R. § 1.401(a)-13(c)(1)(ii)).

The anti-alienation provision reflects a policy "to safeguard a stream of income for pensioners (and their dependents, who may be, and who usually are

9                                                                          A-2969-16T4

blameless) even if that decision prevents others from securing relief for wrongs done them." Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 376 (1990) (emphasis added). In Guidry, the Court found it inappropriate "to approve any generalized equitable exception . . . to ERISA's prohibition on the assignment or alienation of pension benefits," even though the anti-alienation provision can hinder the collection of a lawful debt. Ibid.

"The spendthrift provision is mandatory and contains only two exceptions." Hawxhurst, 318 N.J. Super. at 84. The first exception allows voluntary and revocable assignments of not more than ten percent of any benefit payment. 29 U.S.C. § 1056(d)(2). The second exception was created when Congress enacted the Retirement Equity Act of 1984, 98 P.L. 397, 98 Stat. 1433, which permits payments from a plan pursuant to a QDRO. Guidry, 493 U.S. at 376 n.18 (citing 29 U.S.C. § 1056(d)(3)). These exceptions are strictly construed. Id. at 377.

A QDRO is a domestic relations order, "which creates or recognizes the existence of an alternative payee's right to, or assigns to an alternative payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B); see also 26 U.S.C. § 414(p)(1). An "alternate payee" is defined as "any spouse, former spouse, child,

A-2969-16T4

or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 29 U.S.C. § 1056(d)(3)(K); see also 26 U.S.C. § 414(p)(8). A domestic relations order is defined as:

> any judgment, decree, or order (including approval of a property settlement agreement), which relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and is made pursuant to a State domestic relations law . . . .
>
> [29 U.S.C. § 1056(d)(3)(B)(ii).]

Marital decrees that do not meet the statutory definition of a QDRO are preempted by ERISA. Ross v. Ross, 308 N.J. Super. 132, 150 (App. Div. 1998). When a marital decree qualifies as a QDRO, the anti-alienation provision does not apply, 29 U.S.C. § 1056(d)(3)(A); Guidry, 493 U.S. at 376 n.18; Johnson v. Johnson, 320 N.J. Super. 371, 381 (App. Div. 1999), and it is "exempt from ERISA's preemption provision," Hawxhurst, 318 N.J. Super. at 84 n.1 (citing Boggs v. Boggs, 520 U.S. 833, 846-47 (1997)).

Notably, our statutes and rules provide for the award of counsel fees in family actions. N.J.S.A. 2A:34-23 (authorizing the award of counsel and expert fees in divorce proceedings, either before or after a judgment of divorce is entered); N.J.S.A. 2A:34-23a (requiring the defaulting party to pay the counsel

fees incurred by the custodial party "in any action to enforce and collect child support"); R. 4:42-9(a)(1) (authorizing counsel fee allowances in family actions).

A.

We first address enforcement of the counsel fee and forensic accountant awards through a QDRO. We are mindful of our decision in Johnson, which held counsel fee awards were not enforceable against a pension plan through a QDRO that violated the terms of the pension plan and was payable directly to the attorney. 320 N.J. Super. at 382-83. The material facts in Johnson, however, are distinguishable in several fundamental ways.

In Johnson, the annuity fund appealed from orders requiring it to pay the attorneys' fees incurred by both parties in their divorce action. Id. at 374. We found the proposed order did not qualify as a QDRO under ERISA for three reasons. Id. at 382-83. First, the orders required payments directly to the attorneys. "[A]ttorneys do not meet ERISA's definition of an 'alternate payee,' defined as 'any spouse, former spouse, [or] child . . . recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.'" Id. at 382 (quoting 29 U.S.C. § 1056(d)(3)(K)). Second, the orders related to payment of attorneys'

12

fees "arising out of the dissolution of the Johnsons' marriage," rather than child support, alimony, or equitable distribution as required by 29 U.S.C. § 1056(d)(3)(B)(i). Ibid. Third, requiring payment of attorneys' fees before benefits payments began at age fifty-five or withdrawal from active employment for at least six months, was a benefit not provided for under the annuity fund plan, "and thus violate[d] 29 U.S.C. § 1056(d)(3)(D)(i)." Ibid. We therefore concluded the "assignment violated the provisions of the Annuity Fund Plan and 29 U.S.C.A. § 1056(d)(3)(D)(i)." Id. at 383.

None of those disqualifying facts are present here. The alternate payee of the proposed QDRO was defendant's former spouse, by rollover, not her attorney or the forensic accountant. The attorney's fees related to enforcement of child support and equitable distribution obligations, not dissolution of the marriage. The forensic accountant fees related to investigation of defendant's meritless marital asset dissipation claim. And the QDRO payments did not violate the annuity plan, which permits transfers by rollover, as evidenced by the Annuity's approval of the proposed QDRO. Under these starkly different circumstances, the proposed QDRO violated neither ERISA nor our holding in Johnson. Entry of the proposed QDRO to enforce the two fee awards is permissible under ERISA's anti-alienation exception.

Other courts have held QDROs may be used to enforce a counsel fee award incurred in obtaining a child support order, Silverman v. Spiro, 784 N.E.2d 1, 7-9 (Mass. 2003); Adler v. Adler, 638 N.Y.S.2d 29 (N.Y. App. Div. 1996), or to enforce support arrears, Renner v. Blatte, 650 N.Y.S.2d 943, 946 (N.Y. Sup. Ct. 1996); In re Marriage of Olivarez, 232 Cal. Rptr. 794, 797-99 (Cal. Ct. App. 1986).

The Silverman court distinguished Johnson, noting the alternate payee was the child's father, not the attorney. Silverman, 784 N.E.2d at 9 n.5. While it recognized ERISA did not expressly permit the use of a QDRO to satisfy counsel fee awards, the court nevertheless explained:

> Necessarily implicit, however, in the Federal law's recognition of a QDRO, is authorization for the reimbursement of attorney's fees incurred in obtaining a proper order. Were it otherwise, a former spouse or party who succeeded in obtaining an appropriate QDRO, would have the order reduced by the necessity of paying attorney's fees. In some circumstances, a former spouse or party might even forgo seeking a needed QDRO because of the prohibitive nature of unreimbursed attorney's fees. These results would undermine the intent of Congress in establishing the QDRO exception by denying deserving parties and children a recovery to which they are entitled.
>
> [Id. at 8.]

We concur with this analysis. A fundamental maxim of equitable jurisprudence is that "equity will not suffer a wrong without a remedy." Crane v. Bielski, 15 N.J. 342, 349 (1954). Plaintiff's court-ordered remedies will likely remain unsatisfied absent enforcement by QDRO.

We further note the broad protections afforded to child support orders when Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), 109 P.L. 8, 119 Stat. 23. BAPCPA amended the Bankruptcy Code to clarify that a debt for a "domestic support obligation" owed to, or recoverable by, a spouse, former spouse, or child of the debtor in the nature of alimony, maintenance, or support of such spouse, former spouse, or child, established by a separation agreement, divorce decree, property settlement agreement, or court order is non-dischargeable. 11 U.S.C. §§ 101(14A), 523(a)(5) and (a)(15). This exception to discharge has been interpreted as applying to counsel fees incurred to obtain or enforce a domestic support obligation. See, e.g., Reissig v. Gruber (In re Gruber), 436 B.R. 39, 43 (Bankr. N.D. Ohio 2010); In re Uzaldin, 418 B.R. 166 (Bankr. E.D. Va. 2009). Thus, a court-ordered obligation to pay an ex-spouse's counsel fees in matrimonial proceedings is a non-dischargeable domestic support obligation. Court-ordered counsel fees incurred in post-divorce proceedings that are

15

payable directly to the attorney are likewise non-dischargeable. <u>Gruber</u>, 436 B.R. at 44; <u>accord</u> <u>Clair Griefer LLP v. Prensky (In re Prensky)</u>, 416 B.R. 406, 410-11 (Bankr. D.N.J. 2009).

Ordinarily, QDROs should be utilized to enforce counsel and expert fee awards only when other assets sufficient to satisfy the awards either do not exist or have been made unavailable by the obligor. We find that to be the case here.

For these reasons, we hold plaintiff was entitled to enforce the counsel and expert fee awards through a QDRO naming her alternate payee. The trial court failed to permit that relief.

B.

We next address the enforcement of the college tuition reimbursement arrears through a QDRO naming plaintiff as alternate payee. For the following reasons, we conclude the college tuition reimbursement arrears were enforceable against defendant's annuity funds through a QDRO.

First, the trial court properly classified the college tuition payment as child support. "[I]n appropriate circumstances, the privilege of parenthood carries with it the duty to assure a necessary education for children." <u>Newburgh v. Arrigo</u>, 88 N.J. 529, 543 (1982). "In this regard, college costs are recognized as a form of support for unemancipated children." <u>Ricci v. Ricci</u>, 448 N.J. Super.

16

546, 572 (App. Div. 2017). "The need and capacity of a child for higher education are two of the many factors that a court must consider in determining the amount of child support to order." Gac v. Gac, 186 N.J. 535, 542 (2006) (citing N.J.S.A. 2A:34-23(a)(5)).

Enforcement of child support arrears by QDRO is allowable under ERISA's anti-alienation exception. Second, both plaintiff and the child fall within ERISA's definition of permissible alternate payee because plaintiff is a former spouse and the child is defendant's son. Third, the payment of the college tuition arrears does not violate the Annuity plan and the form of the proposed QDRO was approved by the Annuity.

Therefore, entry of a QDRO in the amount of $14,514 payable to plaintiff for college tuition reimbursement is permissible. It falls within the exception to ERISA's anti-alienation provision since it is part of defendant's obligation to support his son. It is also permissible as reimbursement to plaintiff for child support payments, to the extent plaintiff was forced to make them on defendant's behalf, because they "related to" defendant's child support obligation.

We hold plaintiff was entitled to enforce the college tuition reimbursement arrearages through a QDRO naming her alternate payee. The trial court failed to permit that relief.

17

## C.

Last, we address the enforcement of the counsel fee judgments by an enhanced wage execution. Domestic support orders are enforceable through an enhanced wage execution of fifty-five percent of the obligor's disposable income pursuant to 15 U.S.C. § 1673(b) and N.J.S.A. 2A:17-56.9. See Burstein v. Burstein, 182 N.J. Super. 586, 593-94 (App. Div. 1982) (holding orders for support arrears that are reduced to judgment are enforceable by an enhanced wage execution of fifty-five percent); see also Cashin v. Cashin, 186 N.J. Super. 183, 186 (Ch. Div. 1982) ("New Jersey courts have the authority to enforce orders of support by garnishment of a defendant's wages at the rate of [fifty-five percent] a week."). "Child support" is defined as including attorney's fees and related costs. N.J.S.A. 2A:17-56.52. Therefore, child support judgments, including attorney's fees awarded to establish or enforce child support obligations, are enforceable through an enhanced wage garnishment of fifty-five percent of defendant's disposable income as defined by 15 U.S.C. § 1672(b). Cashin, 186 N.J. Super. at 187. To the extent the counsel fee judgments related to enforcement of child support, they are enforceable through an enhanced wage garnishment. The trial court failed to permit that relief.

The same reasoning applies to spousal support judgments and attorney's fees incurred to obtain or enforce spousal support. Id. at 186-88. To the extent the counsel fee judgments related to enforcement of the lump sum to be paid in lieu of alimony, they are enforceable through an enhanced wage garnishment. The trial court also failed to permit that relief.

III.

In sum, we reverse the trial court orders denying entry of a QDRO payable to plaintiff from defendant's ERISA protected annuity funds to enforce the unpaid counsel fee, forensic accountant fee, and tuition reimbursement awards. We also reverse the order denying enforcement of the counsel fee judgments by an enhanced wage garnishment to the extent they related to child or spousal support. We remand for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2969-16T4