**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0445-20

TUHIN PANDYA,

    Plaintiff-Appellant,

v.

ROOPAL SHAH,

    Defendant-Respondent.

_____

Submitted November 9, 2021 – Decided November 30, 2021

Before Judges Hoffman and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-1499-12.

Bhavini Tara Shah, attorney for appellant.

Shane and White, LLC, attorneys for respondent (Kenneth A. White, of counsel; Lauren A. Miceli, of counsel and on the brief).

PER CURIAM

Plaintiff appeals from an order denying reconsideration of an order converting attorney's fees awarded to defendant into child support arrears, collectable by the probation department. Plaintiff contends the trial court abused its discretion by converting the award of attorney's fees into child support arrears. Plaintiff also asserts the trial court erred in ordering the probation department to collect the weekly child support arrears. Plaintiff further maintains his current child support payment, including counsel fees, exceeds fifty-five percent of his weekly disposable income, in violation of federal law. We affirm.

I.

We ascertain the following facts from the record. The parties married in September 2010 and divorced in January 2013. The parties share one child together, a son, A.P. Their final judgment of divorce incorporated their marital settlement agreement (MSA).

Beginning in 2014, each party filed motions related to child support and plaintiff sought to vacate the MSA, asserting that defendant never disclosed to him she had a claim pending against her former employer at the time of their

divorce.[1] The trial court declined to vacate the MSA and found that defendant's settlement proceeds were not subject to equitable distribution. Nevertheless, the court determined that the annual interest income defendant would realize from the settlement proceeds should be included in defendant's gross income, for purposes of computing child support, and then recalculated plaintiff's child support obligation. The court also denied the parties' cross-applications for attorneys' fees and costs. Plaintiff appealed and we affirmed. Pandya v. Shah, No. A-3900-14 (App. Div. Dec. 8, 2016) (slip op. at 11-14) (Pandya I).

In rejecting plaintiff's argument that the trial court erred in calculating his child support obligation, we explained:

> In this case, the trial court used the annual income of the parties as reported on their respective 2014 tax returns as the basis for recalculating plaintiff's child support obligation. Plaintiff failed to provide any credible evidence indicating that the adjusted gross income of $60,300 which defendant reported, was inaccurate.
>
> Furthermore, the court did not err by refusing to permit plaintiff to engage in discovery concerning transfers of assets that defendant allegedly made during the marriage. In the MSA, the parties acknowledged that they had made full disclosure of their respective assets, and they were "satisfied" with those disclosures.

---

[1] Approximately six months after the parties' divorce, defendant settled the claim for $400,000.

A-0445-20

In addition, in the MSA, the parties voluntarily waived the right to seek further discovery regarding any issues that had arisen between them. Plaintiff claims that additional income should be imputed to defendant, but the court accepted defendant's testimony that her annual income was $60,300, as reported on her tax return. Plaintiff did not submit sufficient evidence to warrant a different conclusion or further discovery on that issue.

Plaintiff further argues that the court erred by not considering the monies that defendant received in the settlement of her claims against KP&H and M.F. as income. As noted, the court only included the interest earned on the settlement proceeds, which had been deposited into a bank account. The settlement proceeds are not income for purposes of calculating child support because they are not recurring income. . . . Accordingly, we reject plaintiff's contention that the court erred in recalculating his child support obligation.

[Pandya I, slip op. at 11-14 (citations omitted).]

Notwithstanding these adverse rulings, plaintiff continued his efforts to inquire into defendant's financial circumstances, before, during, and after the parties' divorce.

Plaintiff's current appeal stems from motion practice that began before this court decided Pandya I. On October 13, 2016, plaintiff filed a motion seeking a recalculation of child support and a modification of parenting time. Defendant retained Mathias Hagovsky, Ph.D., as plaintiff refused to hire a joint expert, and did not retain his own. Ultimately, after eleven days of trial held

over a period of two-and-a-half years related to plaintiff's requests to modify child support and parenting time, the trial court rendered its decision on the record on March 21 and 25, 2019, fully addressing all the issues between the parties. Pandya v. Shah, No. A-4546-18, (App. Div. Apr. 3, 2020) (slip op. at 9) (Pandya II). The court confirmed the parties' continued joint legal custody of A.P., with defendant remaining the parent of primary residence; in addition, the court also awarded defendant counsel fees in the amount of $62,237.05. Ibid.

Plaintiff appealed, challenging the trial court's rulings regarding parenting time, child support, and counsel fees. We affirmed, finding "no abuse of discretion as to the [trial court's] rulings addressing custody and parenting time" and "no reason to disturb the [trial court's] well-reasoned determination reassessing plaintiff's child support obligation and awarding defendant attorney's fees." Id. at 13, 16. In our decision we summarized and highlighted relevant portions of the trial court's decision:

> In deciding the custody issue, the trial judge reviewed the fourteen factors set forth in N.J.S.A. 9:2-4 to determine what was in the best interest of A.P. The judge provided a factual basis as to each factor in determining the new parenting time plan. In addition to plaintiff's increased time overall, both parties were allotted two consecutive weeks of summer parenting time, and should either party wish to travel internationally, four uninterrupted weeks, provided the other party is afforded the same time.

5

The hearing judge next addressed the issue of the parties' child support obligations and requests for counsel fees. He attributed income to plaintiff of $168,968 and to defendant of $32,350. He ordered plaintiff to pay child support in the amount of $310.00 per week, payable by wage garnishment. The judge also addressed a daycare issue raised by plaintiff: 'The parties agree that there was a period of time that the plaintiff paid for day care or child care when the defendant had not incurred that expense[;]' however, due to lack of sufficient proof at that time, the judge allowed each party to submit a certification outlining the amounts overpaid within 41 days.

Next, the hearing judge turned to the issue of counsel fees. The judge denied plaintiff's request for counsel fees[,] explaining, "It is he who has protracted this litigation . . . and his ill[-]advised position that has extended the litigation. He has ignored [c]ourt orders, Appellate Division decisions and at time[s], logic."

Turning to defendant's request for counsel fees, the judge first considered the factors in Rule 4:42-9. Before reviewing those factors, the judge noted '[t]he [c]ourt is satisfied that [plaintiff] has taken an unreasonable approach to this litigation. Whether fueled by animosity or bad advice, he has taken unreasonable, ill[-]fated or just plain wrong positions . . . .'

Regarding the "parties' ability to pay," he determined plaintiff "is in a much better financial position than the mother to satisfy his own fees as well as contribute to the fees incurred by [defendant]." As to "the reasonableness and good faith of the positions advanced by the parties," he found plaintiff's cumulative actions "exemplify his bad faith in the

6

broadest sense of the word." The judge further noted defendant provided a certification of fees incurred but plaintiff did not.

> The judge addressed "the extent of the fees incurred by both parties," noting defendant incurred $76,319 in attorney's fees and expert costs of $6,775. He also noted defendant incurred $10,989 in fees while defending plaintiff's initial appeal. Plaintiff's counsel did not provide a certification of services. Regarding "the results obtained," the judge found defendant successfully advanced her position through her expert, Dr. Hagovsky. As to "any other factor bearing on the fairness of an award," he found defendant was "stoic" while plaintiff "advanced false claims, misrepresented facts, ignored [c]ourt [orders] and an Appellate Division decision[.] He has put his son in the middle and has repeatedly advanced sometimes bizarre positions in an effort to get what he wants. There's no sign of compromise regardless of whatever damage it may cause."
>
> [Pandya II, (slip op. at 7-9).]

Subsequently, the trial court awarded defendant additional counsel fees related to her defense of plaintiff's meritless appeal.

During the pendency of Pandya II, plaintiff sought a stay of enforcement pending appeal of the counsel fee award and defendant sought enforcement of the court's orders on counsel fees. On August 8, 2019, the trial court entered an order denying plaintiff's stay; regarding enforcement, the order provided:

> Plaintiff shall pay the sum of $59,909.05 to [d]efendant's attorney . . . in the following four equal

7

monthly installments as follows: (1) $14,727.26 on September 1, 2019; (2) $14,727.26 on October 1, 2019; (3) $14,727.26 on November 1, 2019; and (4) $14,727.26 on December 1, 2019.

Before the trial court, plaintiff asserted that he was barely meeting life's necessities, including paying over $1,000 per month in child support and additional debt of approximately $65,000, making it impossible for him to afford his legal fees, child support, and still have money for his basic necessities; however, plaintiff did not provide the court with an updated case information statement (CIS). The court therefore utilized the January 2018 CIS previously filed by defendant. The January 2018 CIS indicates: (1) that plaintiff's Schedule A, B and C expenses total to $4,508 per month; and (2) plaintiff's 2017 monthly income was $14,080.64 per month. Moreover, the trial court went on to conclude, "[p]laintiff is not in hardship and earned $168,967 in 2017. Plaintiff has sufficient funds to meet his Schedule A, B, and C expenses and pay his obligation to defendant. The balance of hardships does not support the motion for a stay." Ultimately, plaintiff failed to pay defendant or defendant's counsel in accordance with the August 2019 court order.

On November 5, 2019, defendant forwarded correspondence to the trial court, advising that plaintiff failed to make the required payments and requesting the court to schedule a contempt hearing. On January 23, 2020, the matter was

8

scheduled for a return date, and a plenary hearing regarding plaintiff's failure to make payments on his outstanding counsel fee obligation.

On February 7, 2020, plaintiff finally filed a CIS. When compared to the CIS referenced in the August 2019 order, plaintiff's Schedule A, B, and C expenses remained substantially the same; in 2018, plaintiff claimed his expenditures were $4,508 and in 2020, his expenditures were only slightly higher, $4,700. The CIS did not indicate a dramatic increase in debt between the two case information statements. In addition, plaintiff's paystubs from his alleged "prior employment" referenced 401k contributions; however, no previous case information statement filed by plaintiff ever listed a 401k account or any other retirement.

On February 18, 2020, plaintiff's counsel submitted her consent to the entry of the court's order as it relates to the counsel fee award now being appealed. She stated, in pertinent part: "As to counsel fees conversion to 'additional child support' same is not objectionable so long as it is clear that same shall be modified as to the amounts due based on the outcome/conclusions of appeal and/or reward and re-evaluation." (At the time, plaintiff's second appeal remained pending).

The court entered the order for plaintiff to pay defendant's counsel fees on February 27, 2020. Plaintiff filed a motion for reconsideration, which the trial court denied.

This appeal followed, with plaintiff raising the following arguments: 1) the trial court erred and abused its discretion in converting the entirety of an unallocated/not delineated counsel fee award into child support arrears; 2) the trial court erred in ordering that the sums converted are to be collected by the probation department and subjected to enhanced wage garnishment provisions; 3) the trial court erred in requiring such converted sums to be collected by the probation department in violation of federal law; 4) the trial court erred and abused its discretion in entering a support order in excess of fifty-five per cent of plaintiff's net disposable income; 5) the trial court erred in requiring the entirety of counsel fees to be converted to child support arrears without a plenary hearing, the ramification[s] of which are inequitable and contrary to law.

## II.

A reviewing court will uphold a trial court's factual findings if they are supported by "adequate, substantial, and credible evidence on the record." Cesare v. Cesare, 154 N.J. 394, 412 (1998). Generally a trial court's credibility determinations also receive deference. Id. at 411-13. Where a trial court goes

10

so "wide of the mark as to be 'clearly mistaken and so plainly unwarranted that the interests of justice demand intervention or correction'" the scope of appellate review broadens. Matter of Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993).

Plaintiff argues that the trial court erred and abused its discretion in converting the entirety of the counsel fees award into child support arrears. We disagree. Trial judges are afforded wide discretion in deciding many of the issues that arise in civil and criminal cases, which appellate courts review for an abuse of discretion. "[A]n abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably depart[ing] from established policies, or rests on an impermissible basis.'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). When examining a trial court's discretionary authority, this court will reverse "only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (citation omitted).

The trial court had ample reason to conclude that plaintiff would not comply with the order to pay defendant's counsel fees if not converted to child support arrears. Indeed, the trial court noted that plaintiff had ignored court

orders for contribution to extracurricular activity. Plaintiff frequently refused to comply with the parties' MSA without any basis. The court found plaintiff's positions to be unreasonable, exemplifying plaintiff's bad faith "in the broadest sense of the word." Accordingly, the trial court did not abuse its discretion by converting defendant's attorney's fees to child support arrears.

Plaintiff next argues the trial court erred in ordering that the sums converted be collected by the probation department and subjected to enhanced wage garnishment provisions. We disagree. Domestic support orders are enforceable through an enhanced wage execution of fifty-five percent of the obligor's disposable income. Orlowski v. Orlowski, 459 N.J. Super. 95, 109 (App. Div. 2019); 15 U.S.C. § 1673(b); N.J.S.A. 2A:17-56.9. "Child support" is defined as including attorney's fees and related costs. N.J.S.A. 2A:17-56.52. To the extent counsel fee judgments relate to the enforcement of child support, they are enforceable through an enhanced wage garnishment. Orlowski, 459 N.J. Super. at 110.

It is clear that the counsel fee judgment related to the enforcement of child support. The trial court noted in its June 3, 2019 order that there are references to child-related costs and credits towards child-related costs. Both the March 25, and June 3, 2019 court orders indicate that the matters for decision at the

conclusion of the plenary hearing were "to recalculate child support . . . ." Accordingly, the fees that defendant incurred were "related to child support," allowing the trial court to subject plaintiff to an enhanced wage garnishment.

Furthermore, the trial court did not abuse its discretion in ordering the probation department to collect the attorney's fees due to defendant. The trial court had ample reason to believe that the strictest possible means were necessary to ensure that plaintiff would pay defendant's attorney's fees.

Plaintiff next argues the trial court erred in entering a support order in excess of fifty-five per cent of plaintiff's net disposable income. We disagree. 15 U.S.C. § 1673(b)(2)(A) allows the court to garnish fifty-five percent of an employee's disposable income if the employee is supporting a child or spouse and the wage garnishment is related to past due child support, spousal support, or unpaid taxes.

Plaintiff avers that he is currently unemployed and will become destitute if the enhanced wage garnishment is enforced. The record lacks competent evidence to support these contentions. Regarding an obligor's child support obligation, "current earnings are not the sole criterion to establish a party's obligation for support." Halliwell v. Halliwell, 326 N.J. Super 442 (App. Div. 1999), citing Lynn v. Lynn, 165 N.J. Super. 328, 341 (App. Div. 1979). It is the

13

obligor's "potential earning capacity . . . not his or her actual income, [that] should be considered when determining the amount a supporting party must pay." Mowery v. Mowery, 38 N.J. Super. 92, 105 (App. Div. 1955).

Plaintiff's annual net income as of 2019 was $119,672. Plaintiff failed to establish that the enhanced wage garnishment will surpass fifty-five percent of his recent net income, or his present earning capacity. Indeed, the trial court requested plaintiff produce documentation of his changed financial situation at past hearings, yet plaintiff failed to do so. Fifty-five percent of $119,672 is $65,819.60. The enhanced wage garnishment provision, totaling $810 per week, amounts to $42,120 annually. The enhanced wage garnishment thus comports with the federal statute until plaintiff submits an updated CIS.

To the extent we have not directly addressed the balance of plaintiff's arguments, we find them to lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-0445-20